**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | | |
|---|---|---|---|
| IN RE: | ) | Case No. | 25-10081-BFK |
| | ) | | |
| JIHOON PARK, | ) | Chapter 7 | |
|     Debtor. | ) | | |
| | ) | | |
| _____ | ) | _____ |
| BOO RAK LEE, | ) | | |
|     Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Adv. Proc. No. _____ |
| | ) | | |
| JIHOON PARK | ) | | |
| 4619 Granite Rock Court | ) | | |
| Chantilly, VA 20151 | ) | | |
| | ) | | |
| JONG KIM | ) | | |
| 4619 Granite Rock Court | ) | | |
| Chantilly, VA 20151 | ) | | |
| | ) | | |
| and | ) | | |
| | ) | | |
| Donald F. King, Chapter 7 Trustee | ) | | |
| 1775 Wiehle Avenue, Suite 400 | ) | | |
| Reston, VA 20190 | ) | | |
| | ) | | |
|     Defendants | ) | | |

**ADVERSARY PROCEEDING COMPLAINT TO DETERMINE
NON-DISCHARGEABILITY OF DEBT,
OBJECT TO DEBTOR'S DISCHARGE, OBJECT TO CLAIMED EXEMPTIONS,
AVOID AND RECOVER FRAUDULENT TRANSFERS,
AND IMPOSE CONSTRUCTIVE TRUST OR EQUITABLE LIEN**

Plaintiff, Boo Rak Lee ("Lee" or "Plaintiff"), by counsel, files this Complaint against

Debtor Jihoon Park ("Park", "Defendant" or "Debtor"), Jong Kim (Jihoon Park's Spouse), and

Don King, Trustee, accompanied by Adversary Proceeding Cover Sheet (Form B 1040) per Local Bankruptcy Rule 7003-1, and states as follows:

## I. PARTIES AND JURISDICTION

1. Defendant Jihoon Park commenced this bankruptcy case by filing a voluntary petition under chapter 7 of Title 11 of the United States Code on or about January 14, 2025.

2. Defendant Jong Kim is the spouse of Defendant Jihoon Park and a potential initial or immediate transferee of property of Defendant Jihoon Park within the meaning of 11 U.S.C. § 550(a).

3. Plaintiff Boo Rak Lee (Plaintiff) is an individual creditor of the Debtor and resides in Loudoun County, Virginia.

4. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5. The chapter 7 bankruptcy case is pending before this Court.  Accordingly, venue of this adversary proceeding is proper in this Court under 28 U.S.C. § 1409(a).

6. This adversary proceeding is brought pursuant to, inter alia, 11 U.S.C. §§ 523, 727, 544, and 105, and Federal Rules of Bankruptcy Procedure 4004, 4007, and 7001 et seq.

## II. FACTUAL ALLEGATIONS

7. On or about April 6, 2023, Plaintiff Boo Rak Lee and Defendant Jihoon Park met at the Korea Blockchain Conference in 4000 Legato Rd, Fairfax, Virginia.

8. In the months following their initial meeting (May 2024), Park maintained both personal and professional contact with Lee.

9. In May 2024, Park represented himself as an executive of Massachusetts Mutual Life Insurance Company ("MassMutual").

10. At their May 2024, meeting, Boo Rak Lee requested Park's business card. Park sent Lee a digital business card via KakaoTalk, affiliated with MassMutual, listing a Fairfax office address of 3903 B Fair Ridge Dr., Fairfax, VA 22033.

11. On or about May 2024, Park claimed to be the U.S. Head of FileUp, a Korea-based cryptocurrency investment platform.

12. Park told Lee that he managed the investment portfolios of multiple high-net-worth clients. Park made similar remarks multiple times, including during a conversation on August 31, 2024, where he stated that he had made significant profits for many people.

13. Park claimed to be involved in mergers and corporate finance transactions totaling hundreds of millions of dollars.

14. Park described himself as a financially successful and wealthy investor.

15. Park offered Lee an opportunity to invest in a diversified portfolio of cryptocurrencies, index funds, stocks, and ETFs.

16. Park told Lee that the investment was safe, profitable, and fully liquid.

17. Park assured Lee that the invested funds could be withdrawn at any time.

18. In August 2024, Park urgently solicited $300,000 from Lee for what he described as an immediate investment opportunity that required quick action.

19. On or about August 31, 2024, Lee met Park at what Park represented as his office lobby at 3903 B Fair Ridge Dr., Fairfax, VA 22033, and issued a $300,000 Bank of America check payable to Park.

20. The memo line of the check read "personal investment."

21. After receiving the $300,000 from Lee, Park promised to provide investment portfolio documentation for the investment.

22. Park told Lee that the investment portfolio would be delivered on or about September 7, 2024.

23. Park never delivered any investment portfolio documents to Lee.

24. Between September and December 2024, Park gave repeated excuses for the delay in providing documentation.

25. By December 2024, Park ceased communicating with Lee.

26. On or about September 2024, Park purchased a residence located at 4619 Granite Rock Ct., Chantilly, Virginia.

27. The purchase price of the Chantilly property was approximately $1.2 million.

28. The down payment for the Chantilly property was approximately $700,000.

29. The $700,000 down payment included $300,000 traced to Lee's investment funds.

30. The remaining $400,000 used for the down payment came from Park's individually held bank account.

31. The Chantilly property was titled in tenancy by the entirety with Park's spouse Jong Kim.

32. On January 14, 2025, Park filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

33. Park did not disclose the purchase of the Chantilly property in his original bankruptcy schedules.

34. Park did not disclose the $300,000 debt owed to Lee in his original bankruptcy filings.

35. Park did not inform Lee about the bankruptcy filing before or after it was made.

36. After the bankruptcy filing, Park contacted Lee on or about January 22, 2025, claiming his silence was due to extended travel in Korea and a lost phone.

37. Plaintiff Lee demanded the return of his $300,000 during the phone call with Defendant Park, but Park did not respond to the request or return the funds.

38. Park did not disclose to Lee during those communications that he had filed for bankruptcy.

39. On February 20, 2025, Park appeared at the first § 341 meeting of creditors.

40. At the § 341 meeting, Park characterized Lee's $300,000 as a personal loan, intended for a duration of three to five years, from a close friend who provided it to assist Park during a difficult time.

41. On March 21, 2025, Park appeared at a continued § 341 meeting.

42. At the continued meeting, Park changed his explanation and claimed that Lee's $300,000 was a secured loan backed by Korean cosmetic inventory in Korea.

43. Park was unable to identify or describe the inventory allegedly used to secure Lee's funds.

44. Park produced no documentation showing the purchase, shipment, or security interest in any such inventory.

45. The Chapter 7 Trustee traced Lee's $300,000 directly to the down payment on the Chantilly property.

46. The Trustee advised Park's counsel that the $300,000 must be returned to the estate, either voluntarily or through litigation.

47. The Trustee identified the tenancy by the entirety titling of the Chantilly property as a potential fraudulent conveyance.

48. Since receiving Lee's funds, Park has failed to retain or produce any records evidencing the promised "diversified investment portfolio," the existence of Korean cosmetic inventory, or any other business purpose for the $300,000.

49. The absence of books and records makes it impossible for Lee or the Trustee to ascertain the disposition of estate assets.

50. Plaintiff Lee, through counsel, filed a timely proof of claim in the amount of $300,000.

51. Park has continued to reside in the Chantilly property.

52. Park has not returned any portion of the $300,000 to Plaintiff Lee.

## COUNT I

**Objection to Debtor's Discharge Under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5)**

Plaintiff incorporates all preceding paragraphs.

53. Fraudulent Transfer and Concealment: Within one year prior to filing his bankruptcy petition, Defendant Jihoon Park transferred and concealed property with the intent to hinder, delay, or defraud creditors, including the purchase of a $1.2 million residence using Plaintiff Lee's funds. The property was titled in tenancy by the entirety with his spouse, a form of ownership commonly used to shield assets from individual creditors.

54. Failure to Maintain Adequate Records: Defendant Park has failed to keep or preserve adequate recorded information from which his financial condition or business transactions might be ascertained. This includes the absence of any records evidencing the promised "diversified portfolio," the existence of Korean cosmetic inventory, or any other business purpose for the $300,000 obtained from Plaintiff Lee.

6

55. Inability to Ascertain Financial Condition: The absence of books and records makes it impossible for Plaintiff Lee or the Chapter 7 Trustee to ascertain the disposition of estate assets, including the $300,000 transferred by Lee.

56. No Justification for Inadequate Records: Defendant Park has not provided any justification for his failure to maintain adequate records. Given his representations as a financial professional and the complexity of the transactions involved, Park's failure to keep records is unjustified under the circumstances.

57. False Oaths and Inconsistent Statements: At the time of filing his bankruptcy petition, Defendant Park knowingly and fraudulently made a false oath or account in connection with the case by omitting the Chantilly property from his original schedules and failing to disclose the $300,000 debt owed to Plaintiff Lee (p. 6 . Additionally, Park gave materially inconsistent statements at his § 341 meetings regarding the nature of the $300,000, initially describing it as a personal loan and later as a secured loan backed by non-existent inventory.

58. Failure to Explain Loss of Assets: Defendant Park has failed to offer a satisfactory explanation for the disappearance or disposition of Plaintiff's $300,000, or how the investment was used as promised.

59. Park's conduct satisfies each of the foregoing subsections of § 727 and warrants denial of his discharge.

Plaintiff respectfully requests that the Court deny Defendant Park's discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5) and grant such further relief as the Court deems just and proper.

## COUNT II

### Non-Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

Plaintiff incorporates all preceding paragraphs.

60. False Representations: Defendant Park made multiple false representations to Plaintiff Lee, including claims of being an investment financial professional affiliated with MassMutual and managing high-net-worth clients' assets. Park assured Lee that the investment was safe, profitable, and fully liquid.

61. Intent to Deceive: Park's representations were made with the intent to deceive Lee, as evidenced by his failure to provide any investment documentation and his subsequent cessation of communication.

62. Justifiable Reliance: Lee justifiably relied on Park's representations, given Park's professional presentation, use of a corporate business card, and the setting of their meetings.

63. Resulting Loss: As a direct result of Park's fraud, Lee lost $300,000, which was traced directly to the purchase of the Chantilly property, confirming that the funds were misappropriated for Park's personal benefit.

Plaintiff requests that the Court declare this debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT III

### Objection to Claimed Exemptions

Plaintiff incorporates all preceding paragraphs.

64. Defendant Park has claimed, or may claim, an exemption in the real property located at 4619 Granite Rock Ct., Chantilly, Virginia.

65. Defendant Park purchased the Chantilly property in September 2024 for approximately $1.2 million.

66. The down payment for the Chantilly property included $300,000 obtained from Plaintiff Lee based on false representations.

67. The property was titled in tenancy by the entirety with Defendant's spouse, using individually controlled funds, including those fraudulently obtained from Plaintiff.

68. Defendant Park used funds from his solely held personal account—including the $300,000 obtained from Plaintiff—to purchase the Chantilly property.

69. The tenancy by the entirety titling was used to hinder, delay, or defraud creditors, including Plaintiff.

70. Under applicable law, including Virginia exemption statutes and 11 U.S.C. § 522, a debtor may not exempt property acquired with funds obtained by fraud.

71. Invalid Exemption Claim: Defendant Park has claimed, or may claim, an exemption in the Chantilly property, which was purchased with funds obtained by fraud. Under applicable law, including Virginia exemption statutes and 11 U.S.C. § 522, a debtor may not exempt property acquired with funds obtained by fraud.

72. Tenancy by the Entirety: The property was titled in tenancy by the entirety with Defendant's spouse, using individually controlled funds, including those fraudulently obtained from Plaintiff.

Plaintiff objects to any claimed exemption in the Chantilly property to the extent that it includes or derives from the $300,000 transferred by Plaintiff.

## COUNT IV

### Imposition Constructive Trust or Equitable Lien

Plaintiff incorporates all preceding paragraphs.

73. Defendant Park obtained $300,000 from Plaintiff Lee under false pretenses and fraudulent inducement, claiming the funds would be used for a safe, diversified investment opportunity.

74. Defendant Park knowingly misused Plaintiff's funds by applying them to the down payment of a personal residence rather than investing them as promised.

75. Defendant Park occupied a position of trust by holding himself out as an investment financial professional, affiliated with MassMutual, managing assets for high-net-worth individuals, and offering investment services to Plaintiff Lee.

76. Defendant Park's conduct created a confidential or fiduciary relationship with Plaintiff Lee, and he breached his duty by diverting investment funds for personal use.

77. Defendant Park's misuse of Plaintiff's funds, and concealment of the true use, was intentional and for the purpose of unjust enrichment.

78. Defendant Park would be unjustly enriched if permitted to retain ownership of the Chantilly property acquired with funds wrongfully obtained from Plaintiff.

79. The property in question is specifically identifiable as the residential real estate located at 4619 Granite Rock Ct., Chantilly, Virginia.

80. The Chantilly property was purchased in September 2024 for approximately $1.2 million, with $300,000 directly traceable to Plaintiff Lee's funds.

81. The Chapter 7 Trustee has traced the $300,000 to the down payment used in the purchase of the Chantilly property.

82. Defendant Park titled the property in tenancy by the entirety with his spouse JONG KIM in an apparent attempt to shield it from creditors, including Plaintiff.

83. Misuse of Funds: Defendant Park knowingly misused Plaintiff's funds by applying them to the down payment of a personal residence rather than investing them as promised.

84. Fiduciary Relationship: Park occupied a position of trust by holding himself out as an investment financial professional, creating a confidential or fiduciary relationship with Plaintiff Lee, which he breached .

85. Unjust Enrichment: Park would be unjustly enriched if permitted to retain ownership of the Chantilly property acquired with funds wrongfully obtained from Plaintiff.

Plaintiff requests the Court to impose a constructive trust or, alternatively, an equitable lien, on the Chantilly property to the extent of $300,000.

## COUNT V

**Non-Dischargeability of Debt for Embezzlement and/or Larceny – 11 U.S.C. § 523(a)(4)**

Plaintiff incorporates all preceding paragraphs.

86. Embezzlement: Lee delivered $300,000 to Park for the specific purpose of managing and investing those funds. Park appropriated the funds to his own use by applying them to the down payment on the Chantilly Property.

87. Fraudulent Intent: At the moment of appropriation, Park possessed the fraudulent intent to convert the funds and deprive Lee of their lawful use and benefit.

88. Such conduct constitutes "embezzlement" or, in the alternative, "larceny" within the meaning of § 523(a)(4).

WHEREFORE, Plaintiff requests judgment declaring the $300,000 debt non-dischargeable under § 523(a)(4).

## COUNT VI

**Non-Dischargeability for Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)**

Plaintiff incorporates all preceding paragraphs.

89. Willful and Malicious Conduct: Park's intentional diversion of Lee's funds and subsequent concealment was undertaken with the deliberate objective of converting Lee's property and inflicting economic harm.

90. Intent to Harm: Such actions were both willful—performed with subjective intent to injure Lee—and malicious, being wrongful, without just cause, and targeted at Lee's proprietary interests.

WHEREFORE, Plaintiff requests judgment declaring the $300,000 debt non-dischargeable under § 523(a)(6).

## COUNT VII
**Avoidance and Recovery of Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(A) & 550**

Plaintiff incorporates all preceding paragraphs.

91. Fraudulent Transfer: Within two years before the petition date, Park transferred $300,000 of Lee's funds to or for the benefit of himself and his spouse by applying those funds to the Chantilly Property.

92. Intent to Defraud: Park made the transfer with actual intent to hinder, delay, or defraud Lee and other creditors, as evidenced by the tenancy-by-the-entirety titling, nondisclosure of the asset, and inconsistent sworn statements.

Plaintiff prays for avoidance of the transfer, recovery of the $300,000 (plus interest) from any transferee, and authorization to proceed derivatively should the Trustee decline action.

## COUNT VIII

### Injunctive Relief Under 11 U.S.C. § 105(a) & Fed. R. Civ. P. 65

Plaintiff incorporates all preceding paragraphs.

93. Irreparable Harm: Plaintiff Boo Rak Lee will suffer irreparable harm if Defendant Jihoon Park is allowed to continue concealing or dissipating assets, including the Chantilly property, which was purchased using funds fraudulently obtained from Lee. The concealment and potential dissipation of these assets would prevent Lee from recovering the $300,000 or any other assets traceable to his funds, causing harm that cannot be adequately compensated by monetary damages (p. 3) .

94. Probability of Success on the Merits: Plaintiff has a high probability of success on the merits of the underlying claims, including non-dischargeability of debt due to fraud and embezzlement, and objections to discharge based on false oaths and fraudulent transfers. The detailed factual allegations, such as the tracing of funds to the Chantilly property and the inconsistent statements made by Park, support this probability (p. 5) .

95. Balance of Harms: The balance of harms favors the issuance of an injunction. The potential harm to Lee from the loss of recoverable assets is significant, while the harm to Park from an injunction would primarily involve restrictions on asset transfers, which is justified given the allegations of fraud. Preventing further asset dissipation is necessary to protect Lee's interests (p. 7) .

96. Public Interest: The public interest supports the issuance of an injunction to maintain the integrity of the bankruptcy process and prevent fraudulent conduct. Granting an

injunction aligns with the public interest by ensuring that creditors can recover assets and that bankruptcy proceedings are conducted fairly (p. 7).

WHEREFORE, Plaintiff respectfully requests that this Court issue a preliminary and permanent injunction:

- Enjoining Defendant Jihoon Park from transferring, encumbering, or otherwise disposing of any assets, including the Chantilly property, pending the resolution of this adversary proceeding.
- Requiring Defendant to provide a full accounting of all assets and transactions related to the $300,000 obtained from Plaintiff.
- Granting such other and further relief as the Court deems just and proper under the circumstances.

### III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Boo Rak Lee, respectfully requests that this Court:

97. Declare that the debt owed to Lee by Defendant Jihoon Park in the principal amount of $300,000 (plus interest and related damages) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6);

98. Deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2),(a)(3), (a)(4), and/or (a)(5);

99. Avoidance and recovery of fraudulent transfers: Avoid the transfer of Lee's $300,000 (and any other traceable funds) under 11 U.S.C. §§ 548(a)(1)(A) and/or 544(b) (invoking the Virginia Uniform Voidable Transactions Act) and enter judgment for recovery of the value of the transfer against all initial and subsequent transferees under § 550;

14

100. Sustain Lee's objection to any claimed exemption in property funded by Lee's $300,000;

101. Impose a constructive trust or equitable lien upon the Property located at 4619 Granite Rock Ct., Chantilly, Virginia, or any other assets acquired or improved with Lee's funds, to the extent necessary to secure the repayment of Lee's claim;

102. Declare that any interest held by JONG KIM in the Property is subject to such constructive trust or lien, if the Court deems such relief necessary to prevent unjust enrichment or fraudulent conveyance;

103. Injunctive relief - Issue temporary, preliminary, and permanent injunctions under 11 U.S.C. § 105(a), Fed. R. Civ. P. 65, and Fed. R. Bankr. P. 7065 that:

    a. Restrain Park, Jong Kim, their agents, and any person acting in concert with them from transferring, encumbering, concealing, or otherwise disposing of the Chantilly property or any proceeds thereof;

    b. Require Park and Jong Kim to preserve and maintain the property in good condition pending final resolution; and

    c. Authorize Lee to record a lis pendens or similar notice in the land records to give public notice of this action and the Court's injunction;

104. Award damages in Lee's favor, in an amount not less than $300,000 plus interest, fees, and costs, as may be proven at trial; and

105. Grant such other and further relief as is just and proper under the circumstances.

Dated: April 19, 2025

                                    Respectfully submitted,
                                    Boo Rak Lee
                                    *By Counsel*

                      */s/ Daniel K. Kim*
                      Daniel K. Kim [VSB No. 86835]
                      KIMLAW, PLLC
                      4103 Chain Bridge Road, Suite 100
                      Fairfax, VA 22030
                      Phone: 703-940-3800 ext. 201
                      Email: daniel.kim@kimlaw.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2025, a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system, which will serve notice on all registered participants and mailed a true copy by first-class mail to all parties at the addresses listed below:

JIHOON PARK
4619 Granite Rock Court
Chantilly, VA 20151

JONG KIM
4619 Granite Rock Court
Chantilly, VA 20151

Donald F. King
1775 Wiehle Avenue, Suite 400
Reston, VA 20190

                      */s/ Daniel K. Kim*
                      Daniel K. Kim [VSB No. 86835]